## THE UNITED STATES, *Respondents, · v.* GEORGE REYNOLDS, *Appellant.*

(See Same Case, Post.)

RELIGIOUS CONVICTIONS CANNOT EXCUSE CRIME.—On the trial of Defendant for the crime of Polygamy, evidence was offered by him to show that polygamous marriage was a part of his religion; *held*, such evidence not admissable and has no foundation for its admission in either justice, reason or law.

NUMBER OF PERSONS CONSTITUTING A GRAND JURY.—The Act of Congress commonly called the "Poland Bill," does not fix the *number* of persons that shall constitute a Grand Jury. Nor does it by express terms or by implication repeal the existing Territorial laws fixing the number of persons that shall constitute the Grand and Petit juries in the District Courts. (Sec. 13 Wallace 434), also (People *v.* Green, Ante 11).

LAWS NOT INCONSISTENT.—A law which declares the number necessary to constitute a Grand Jury, is not inconsistent with a law which provides the mode of procuring the number out of which to compose the jury.

NUMBER REQUISITE FOR A GRAND JURY.—Under the "Poland Bill" and the existing Territorial laws, a Grand Jury must be composed of fifteen members.

JUROR WHEN INCOMPETENT FROM CONSCIENTIOUS SCRUPLES.—A person who has conscientious scruples against indicting persons for the crime of polygamy, is wholly incompetent to serve as a Grand Juror in the investigation of such charge. The same rule applies to his competency to sit upon a petit jury.

COURT CAN SUMMON ADDITIONAL JURORS.—If from any cause the jurors summoned prior to the term do not appear, the Court is authorized to have such additional number drawn and summoned, after the beginning of the term, as may be necessary to complete the panel.

JUROR OWNING TAXABLE PROPERTY.—A juror summoned was the owner of taxable property, and was ready to pay his taxes, but was not assessed, nor did he pay taxes; *held,* if he was not so assessed and allowed to pay taxes, it was not his fault, and such juror is competent to serve.

APPEAL from the Third District Court.

The facts appear in the Opinion.

*Snow, Sutherland & Bates,* for Appellant.

*Wm. Carey,* U. S. District Attorney, for the People.

BOREMAN, J., delivered the Opinion of the Court.

The Appellant was convicted of a violation of the statute of the United States of 1862 against polygamy. The Appellant assigns as error the rejection of evidence offered by him to show that plural or polygamous marriage was part of his religion. This objection of the Appellant, is, as we conceive, based upon neither reason, justice nor law, and therefore we dismiss it without further notice.

The principal difficulties in the case arise in reference to the constitution of the Grand Jury, which found the indictment upon which this conviction was had. The most important of these objections to the Grand Jury was that which had reference to the number necessary to constitute a legal Grand Jury. This indictment was found by a Grand Jury consisting of twenty-three men. The Appellant assigns, this for error, claiming that fifteen was the proper number to constitute that body.

The Act of Congress entitled an " Act in relation to Courts and judicial officers in the Territory of Utah," approved June 23d, 1874, and which is commonly styled the " Poland Bill," provides (in sec. 4), for the making once a year of a jury list of two hundred names, from which the Grand and Petit juries for the District Court shall be drawn ; and it requires that when a Grand or Petit jury is to be drawn for any term, the judge of the District Court shall give public notice thereof, and shall preside at the drawing ; and that the Clerk shall put the two hundred names on separate slips of paper and

place them in a covered box and thoroughly mix and mingle them, and that thereupon the United States Marshal shall draw from the " box such number of names as may have previously been directed by said judge," the Grand Jury to be drawn first ; that a venire shall issue and the persons whose names are thus drawn shall be duly summoned before the term of Court ; and that " the jurors so drawn and summoned shall constitute the regular Grand and Petit juries for the term for all cases." It was under this Act that the Grand Jury which found the indictment was procured.

Let us, then, first consider how the law stood at the passage of this Act.    In the well-known case of Clinton *v.* Engelbrecht (13 Wallace), the Supreme Court of the United States, after referring to the power of the Legislature as extending to rightful subjects of legislation, say, " The method of procuring jurors, for the trial of cases is    *    *    a rightful subject of legislation, and the whole matter of selecting, impanelling and summoning juries is left to the Territorial legislature ;" and further that " the action of the Legislatures of all Territories has been in conformity with this construction ; and still further, in another part of the opinion, " that the whole subject matter of jurors in the Territories is committed to Territorial regulation."

The general jury laws of the United States are not by express words made applicable to the Territorial Courts, and if they are to be considered applicable thereto, it can only be so upon the theory that these Territorial District Courts are United States Courts.    In the case of Clinton *v.* Engelbrecht referred to, Chief Justice Chase, in speaking of such a theory and of the action of the Territorial District Court in selecting juries under the United States jury laws, said, " We are of the opinion that the Court erred, both in its theory and in its action ;" and in speaking, in the same case, of the Judiciary Act of 1789, he says, " The regulations of that Act in regard to the selection of jurors have no reference whatever to Territories.    They were framed with reference

to the States, and cannot without violence to the rules of construction be made to apply to Territories of the United States. For similar reasons no Act of Congress respecting juries in United States Courts, enacted subsequent to the Act of 1789, could be made to apply to the Territorial Courts, unless by some express provision to that effect. It is not shown, nor do we believe that it is claimed, that any such provision exists."

The position of the Supreme Court of the United States, so broadly laid down, as before stated, is, as we conceive, well supported by the reasoning of the same Court in the subsequent case of Hornbuckle v. Toombs (18 Wall).

When the Act of Congress, termed the " Poland Bill," was passed, the Territorial jury laws and the United States jury laws were the same as when these decisions of the Supreme Court of the United States were rendered. We cannot, therefore, in the face of the opinion of the highest tribunal of the nation to the contrary, say that, at the passage of the Act of Congress referred to, the general jury laws of the United States were applicable to Territorial Courts. The question then arises, did this Act of Congress change the rule? It certainly changed the rule so far as the two acts are inconsistent. It cannot be said that that Act, however, fixes the number necessary to constitute a Grand Jury. If the panel drawn by the order of the judge determines the number, then it likewise fixes the number of the Petit jury. The language is alike in respect to both. If this construction be correct, a Grand Jury of thirty or any other number, less than two hundred, could be a legal Grand Jury in this Territory. Could Congress ever have intended any such thing? It is but reasonable to suppose that if Congress had intended to fix the number, it would have said so, and not left it to vague supposition. The purpose evidently was to allow the judge to fix the number necessary to be drawn, out of which to form the jury, the jury to be of the number as then established by law.

It is claimed that if the United States jury law be not applicable, nor the number of the jury be allowed to be fixed under the " Poland Bill," yet that the act went far enough to repeal the Territorial law in respect to the number of the Grand Jury and allowed the Common Law to rise up to control the matter. This position, of course, can only be maintained upon the ground that the repeal is by implication merely. Such repeals are not favored, and will not be declared to exist except in case of inconsistent or incompatible enactments. We are unable to perceive any inconsistency or incompatibility between the Teroitorial statute fixing the number of the Grand Jury and this Act of Congress. The Territorial statute seems rather to fill and supply a place not covered by the Act of Congress. A law which declares the number necessary to constitute a Grand Jury is not inconsistent with a law which merely provides the mode of procuring the number of jurors out of which to compose the jury. The laws are entirely reconcilable and consistent, and it is the duty of the Court to declare that both of them shall stand.

So far as the Act of Congress goes it becomes exclusive as to all that it properly embraces, and if Congress is to be considered as having in this Act legislated upon the question of the number of the Grand Jury, then, of course the Territorial Legislature is precluded from doing so. If that Act supersedes the Territorial law now on the statute book as to the number of the jury, it would likewise exclude any future legislation upon the subject by the Territorial Legislature. But the Supreme Court of the United States say, that full authority concerning this matter was given to the Territorial Legislature by the " Organic Act." We cannot say, therefore, that this positive authority given by the " Organic Act " is negatived by implication, when the Act of Congress does not embrace the point.

Under all proper rules of construction, therefore, we are forced to the conclusion that we must resort to the Territorial statute to ascertain the proper number for a

Grand Jury. The statute declares fifteen to be the proper number and does not authorize a Grand Jury of any other number. The Grand Jury which found the indictment in the case before us, having been composed of twenty-three members instead of fifteen, was not such a Grand Jury as the law requires, and by not being properly constituted, its action became vitiated.

There are some minor points in the case which perhaps we should notice. One of the parties appearing as Grand Juror stated, upon his *voir dire*, in answer to a question by the prosecution, that he had conscientious scruples against indicting persons for violation of the law of the United States of 1862, against polygamy. On that ground he was challenged for cause, the challenge sustained and the party discharged and not sworn upon the Grand Jury. This action of the Court, in excluding this party from the jury, is assigned for error.

A person who upon his conscience could not find indictments under a law, would not make a good juryman to enforce that law. And if all members or a majority of a Grand Jury had like scruples, that ancient and venerable body would not only become useless, but also an absolute hinderance to the enforcement of the law. A party having these conscientious scruples would, if sworn upon the Grand Jury, have to commit moral perjury. He, upon oath, admits that his conscience forbids his aiding in the enforcement of a specific law, yet as a Grand Juryman he swears to go counter thereto, and enforce the law. Such a party would be wholly incompetent to sit upon a petit jury. And the same ground which would exclude him from the Grand Jury, would also exclude him from the petit jury. (Wharton's Am. Crim. L. Sec. 469; Burr's trial, Sec. 38.)

We think there was no error in the exclusion of this man from the jury.

It is claimed that the drawing and summoning of some of the Grand Jurors after the beginning of the term, was error. So far as the drawing and summoning of jurors after the number of fifteen had been obtained,

it was error, but so long as that number was not exceeded on the jury there was no error. If, from any cause, the jurors summoned prior to the term do not appear, the Court is authorized, under the act referred to, to have such additional number summoned as the Court may deem necessary to complete the panel. If those thus drawn do not appear, the Court is not compelled to delay indefinitely, but can order the drawing of still a further number, if necessary, to complete the panel.

It is likewise asserted that one of the jurors did not pay taxes. He had taxable property, however, and was ready to pay taxes. If he was not assessed and not thus allowed to pay taxes, it was not his fault, and he cannot be excluded from the jury box for failing to pay taxes.

All of the objections respecting the coustitution of the jury were raised by the Appellant by pleas in abatement.

The judgment of the Court below is reversed, and the cause remanded to the Court below; with instructions to set the verdict aside and quash the indictment.

Lowe, C. J., concurs.

Emerson, J.—The only doubt in my mind in connection with this case, was in reference to the constitution of the Grand Jury, but upon a more critical examination of the subject, I very cheerfully concur in the result arrived at.